# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN DANDREW SANDOVAL,<br><br>　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　Defendant. | Case No. 1:24-cv-00907-SAB<br><br>ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 14, 15) |

Plaintiff Christian Dandrew Sandoval ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in its analysis of the medical opinions of record and Plaintiff's subjective complaints.

For the reasons explained herein, the Court will affirm the decision of the Commissioner.

///

///

///

1

# I.

# BACKGROUND

### A. Procedural History

On January 19, 2022, Plaintiff protectively filed an application for supplemental security income, alleging disability beginning October 1, 2021. (ECF No. 11, Administrative Record ("AR"), 17.) Plaintiff's application was initially denied on March 15, 2022, and denied upon reconsideration on July 7, 2022. (AR 17.) Plaintiff requested before a hearing before an ALJ. On September 6, 2023, Plaintiff, represented by counsel, appeared for a hearing in front of an ALJ. (Id.) Plaintiff and vocation expert ("VE") Linda M. Ferra testified. (Id.) On November 29, 2023, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 29.) On June 24, 2024, the Appeals Council denied Plaintiff's request for review. (AR 1-5.)

### B. The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 19, 2022, the application date. (AR. 19.) The ALJ found that Plaintiff had the following severe impairments: anxiety and mood disorder and cannabis use disorder. (Id.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff should avoid all hazards such as ladders, ropes, and scaffolds, unprotected heights and avoid machinery; Plaintiff can understand, remember, and carry out simple work instructions; Plaintiff can have occasional interaction with coworkers and the public. (AR 22.)

The ALJ then found that that Plaintiff had no past relevant work, he was 18 on the application date, and he had at least a high school education. (AR 27.) The ALJ discussed that transferability of job skills was not material to the determination of disability because Plaintiff did not have past relevant work. (Id.) Considering Plaintiff's age, education, work experience, and

RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Id.) Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the Social Security Act, from January 19, 2022, through the date of the decision, November 29, 2023. (AR 28-29.)

Plaintiff sought timely review of the Commissioner's decision in the federal courts. (ECF No. 1.) The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 6, 9, 10.) Thereafter, the parties filed their briefs on the matter.[1]

## II.

## LEGAL STANDARD

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective. Rule 5 states, "[t]he action is presented for decision by the parties' briefs." Fed. R. Civ. P. Appx. Rule 5. The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules." Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022. Like an appeal, "the briefs present the action for decision on the merits. This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record." Id. The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Id. Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of his position on whether the Court should affirm, modify, or reverse the decision of the Commissioner. 42 U.S.C. § 405(g).

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

> claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3] "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

### B. Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence.  42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154.  In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless.  Stout, 454 F.3d at 1055-56.  "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'"  Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020).  The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in two ways. First, Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of record. (ECF No. 14, pp. 4-8.) Second, Plaintiff contends that the ALJ erred by failing to give clear and convincing reasons why the ALJ rejected Plaintiff's subjective complaints regarding his mental symptoms. (Id. at pp. 8-10.) The Commissioner opposes, arguing that substantial evidence supports the ALJ's decision. (ECF No. 16.) The Court agrees with the Commissioner.

### A.   The ALJ's Assessment of Medical Opinions

Plaintiff brings a lean argument, contending that the ALJ failed to provide a sufficient rationale that supported the finding that the state-agency consultants' opinions were not fully persuasive on the singular issue of Plaintiff's ability to interact with supervisors. The Court is not persuaded.

When an ALJ calculates a claimant's RFC, the ALJ is tasked with determining "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." SSR 96-8p, 1996 WL 374184, at *2 (emphasis in original). In other words, the "RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most." Id. (emphasis in original). An ALJ assesses an RFC

"based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). This includes "any statements . . . provided by medical sources, whether or not they are based on formal medical examinations," as well as reviewing any "consultative examination(s)" and, where applicable, persuasive prior administrative medical findings ("PAMFs"). Id.

When assessing medical opinions under the Social Security Administration's 2017 revised regulations, "there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa." Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022), quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844, 2017 WL 168819 (F.R. Jan. 18, 2017). "The most important factors" that the agency considers when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." Id., quoting 20 C.F.R. § 404.1520c(a). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." 20 C.F.R. § 404.1520c(c)(1); see also 20 C.F.R. § 416.920c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2); see also 20 C.F.R. § 416.920c(c)(2).

"The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." Woods, 32 F.4th at 792, citing 20 C.F.R. § 404.1520c(c)(3). Therefore, "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records." Id., citing 20 C.F.R. § 404.1520c(c)(3)(i)-(v). That said, "the ALJ no longer needs to make specific findings regarding these relationship factors." Id.

In the decision, the ALJ found the opinions of state agency psychological reviewers E. Oritt, PhD and S. Saxby, PhD, to not be fully persuasive. (AR 26.) As relevant here, on March 15, 2022, Dr. Oritt, on an initial review, concluded that Plaintiff was moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors. (AR 72.)

1   When explaining the reason for this limitation, Dr. Oritt opined that this limitation was based on
2   Plaintiff's anxiety and occasional paranoia.  (AR 73.)  On July 4, 2022, Dr. Saxby, upon
3   reconsideration, also concluded that Plaintiff was moderately limited in the ability to accept
4   instructions and respond appropriately to criticism from supervisors because of anxiety and
5   occasional paranoia.  (AR 88-89.)

6   Though the ALJ credited the remainder of Drs. Oritt's and Saxby's opinions, the ALJ
7   found that "the notation that [Plaintiff] has moderate limitation regarding abilities to interact with
8   supervisors [was] not supported by the medical evidence of record which shows [Plaintiff was]
9   cooperative with schools staff members and consistently presents as cooperative at exams."  (AR
10  26, citing Exs. 1F, 14F, 7F.)

11  Plaintiff begins with an argument the Court already dispensed of in Scott T. C. v.
12  Commissioner of Social Security, No. 1:23-cv-01776-SAB, 2025 WL 227288 (E.D. Cal. Jan. 17,
13  2025).  In Scott T. C., the Court noted that it was the plaintiff's position "that interactions that
14  claimants have with treatment providers 'do not demonstrate an ability to work with coworkers,
15  supervisors, or the general public in a work setting.'"  Id., quoting Tina R. v. Commissioner of
16  Social Security, No. C18-1041JLR, 2019 WL 1417301, at *5 (W.D. Wash. Mar. 29, 2019).
17  However, the Court explained that, in its view, Tina R. overstated the relevant regulation, which
18  states: "Your ability to complete tasks in settings that are highly structured, or that are less
19  demanding or more supportive than typical work settings *does not necessarily* demonstrate your
20  ability to complete tasks in the context of regular employment during a normal workday or work
21  week."  20 C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis added).  The Court found that Tina R. was
22  not "persuasive for the proposition that an ALJ can *never* look to interactions between a claimant
23  and a health care provider in assessing a claimant's interaction with others."  Scott T. C., 2025 WL
24  227288, at *6 (emphasis in original).  Thus, this Court concluded that an ALJ does not err "by
25  considering Plaintiff's interactions with his health care providers."  Id.  Here, Plaintiff essentially
26  raises the same argument, and the Court is unpersuaded to alter its view on this issue.  The Court
27  notes that the ALJ cited to records that demonstrated Plaintiff's cooperative behavior with medical
28  health providers on numerous occasions.  (AR 26, citing AR 384, 386, 388, 390, 392, 419, 541,

556, 559, 591, 643, 649, 655, 663, 668, 676.)

Plaintiff continues, arguing that even if the ALJ considered interactions Plaintiff had with medical care providers, they cannot be the sole reason to reject a moderate limitation of interacting with interacting with supervisors. To support this, Plaintiff addresses the ALJ's other reason for discounting this limitation, that Plaintiff was cooperative with school staff members. Even assuming the ALJ meant to cite to Exhibit 2F (instead of Exhibit 1F),[4] Plaintiff maintains that this record—Plaintiff's IEP records from October 6, 2020, through October 8, 2021—does not support the ALJ's rationale because it is outside the application date and that the records indicated that Plaintiff cooperated with school staff but was still withdrawn.

The Commissioner argues, and the Court agrees, that Plaintiff's relevant IEP record was dated October 8, 2021, which was three months before Plaintiff's application date of January 19, 2022, and that Plaintiff has not articulated how his condition changed in any significant way over those three months. The Commissioner then contends that Plaintiff's characterization of the relevant IEP record is overblown. The Court also agrees. In particular, Plaintiff states that the record demonstrates that Plaintiff had difficulties and that mental health symptoms of improvement and debilitation can fluctuate over a period of months or years—thus an ALJ may not selectively pick records during improvement. However, the October 8, 2021 record reports that Plaintiff "[could] appropriately communicate with peers and staff," as well "[Plaintiff was] cooperative and respectful. . . . He can be soft spoken or withdrawn and can have difficulty paying attention and remaining on-task." (AR 334.) As the Commissioner points out, these two observations came from the same report, so Plaintiff's suggestion that the ALJ was picking out isolated instances of improvement is not persuasive here.

In sum, the ALJ rejected Drs. Oritt's and Saxby's conclusions that Plaintiff had a moderate limitation regarding his ability to interact with supervisors. The ALJ reasoned that these conclusions were not consistent with the objective medical evidence, which demonstrated that Plaintiff was cooperative with school staff members and consistently presented as cooperative at

---

[4] As Plaintiff seemingly acknowledges, and the Commissioner agrees, the Court finds that the ALJ clearly meant to cite to Exhibit 2F.

exams.  The Court finds that the ALJ sufficiently explained the reasoning for discounting those portions of the state-agency consultative opinions.[5]

Accordingly, the ALJ did not err.[6]

### B. Plaintiff's Subjective Complaints

Plaintiff takes two issues with the ALJ's credibility determination of Plaintiff's subjective complaints.  First, Plaintiff asserts that the ALJ gave only a general summary of the evidence and did not delineate what evidence undermined Plaintiff's alleged limitations.  Second, Plaintiff argues that the ALJ erred by describing Plaintiff's treatment as conservative.  These arguments are unavailing.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014), quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995).  As relevant here, where the ALJ "determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277, quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).  "Ultimately, the 'clear

---

[5] The Court notes that the Commissioner also makes a hair-splitting argument that for state-agency consultative opinions, under their relevant RFC assessments, a doctor's notation that a claimant has a limitation is a conclusion, not a medical opinion. In the Commissioner's view, the only medical opinion in this area is the doctor's narrative explanation for the relevant conclusion. At this time, the Court makes no determination on the merit of such an argument because the ALJ here nonetheless complied with its duty to identify and explain which portions of the medicinal opinions the ALJ credited, discredited, or gave partial credit toward.

[6] The Court agrees with the Commissioner that even if the ALJ erred, Plaintiff has not articulated how such an error here would have not been harmless. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009). To start, the Court observes that it appears that Plaintiff's brief is a palimpsest; however, Plaintiff inadvertently kept in this section the particular facts from a case involving a female client who suffered from bipolar disorder and had an inability to concentrate for long periods of time. (ECF No. 14, p. 7.) Plaintiff did not address this issue in his reply but merely reiterated that any error was not harmless. Even construing Plaintiff's argument to the relevant facts of this case, the Court strains to find that any error would have been harmful. The supporting narrative from the state-agency consultative examiners regarding Plaintiff's ability to interact with others remains unchanged (AR 73, 89), and the RFC incorporated this as a limitation that "[Plaintiff] can have occasional interaction with co-workers and the public." (AR 22.)  Because Plaintiff has not met his burden of demonstrating how any error would be harmful, the Court finds that even if there were an error, any error would have been harmless.

10

and convincing' standard requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony." Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). Boilerplate statements and general summaries of the evidence, without more, are not enough. Id. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277.

While "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise, . . . [w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original). Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499.

The ALJ summarized Plaintiff's subjective complaints as follows:

> At the hearing and throughout the record the claimant reported that he was unable to work due to anxiety and mood disorder and cannabis use disorder. The claimant stated that he is easily frustrated and panicked. He noted that he will start sweating. He opined that he has about 10 anger/anxiety outbursts a month and that during an outburst he will damage property. He opined that after an outburst he must go to his room and calm down. He reported that he uses coping skills to help with anxiety.
>
> The claimant admitted to continued marijuana use noting that he has only had a few brief periods since 2021 that he has not used this drug. He noted that there have been a few days when he did not use marijuana and he was able to focus better, but that he got bored and began to use it again. The claimant noted that his psychiatrist told him to stop using marijuana, but that his therapist told him it could help with anxiety. The claimant noted that he takes prescription medications for his symptoms, which are helpful. He noted that he can manage his own medications without reminders. He testified that he is currently using less marijuana

> than he was in 2021 and that his anger outbursts have decreased.
>
> In terms of activities of daily living, the claimant reported that he lives with his parents and siblings who are 10 and 13 years old. He reported that in a typical day he will play games on his phone and watch TV. He noted that he can care for his personal hygiene, cook for himself, and put away his clothing. He testified that he could do his laundry and that he mows the grass but reported that he needs reminders, and someone usually checks after him to be sure he has completed the task correctly. He noted that he does not drive and that he has never had a driver's license. The claimant noted that he worked for three weeks checking bottles for leaks and stopped working because he could not understand the instructions. He noted that he worked less than a month in another position where he would load boxes into a machine. He reported that he was fired from this job for breaking safety rules.

(AR 23.) While the ALJ noted that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Id.) The ALJ then gave a summary of the medical evidence. Thereafter, the ALJ found that Plaintiff's statements about intensity, persistence, and limiting effects of his symptoms were,

> inconsistent because treatment for the claimant's allegedly debilitating conditions has been conservative and routine with few if any recommendations for intensive in-home services, crisis interventions, inpatient care, or other more aggressive treatment options that would be expected for limitations of the degree alleged. The claimant was treated on one occasion, a year prior to his alleged onset date, for crisis stabilization after an altercation with family, however, he quickly calmed and was discharged (Exhibit 10F). Though he has sought emergent care for reports of high levels of anxiety, these sessions are almost always precipitated by discouraged drug use with exams showing few mental status abnormalities and that the claimant's symptoms quickly improved (Exhibit 6F, 11F). The claimant has exhibited persistent treatment noncompliance and continues to use marijuana daily despite repeated physician directives to stop using this substance as it was likely the root cause of his condition and could exacerbate symptoms (Exhibit 7F, 6F, 3F, 12F, 11F, 14F). Though there are extremely few instances of sobriety, he has admitted that when he stops using marijuana, he feels more clear and less anxious (Exhibit 14F). Even though the claimant is non-compliant the claimant has reported to providers at Turning Point that he experienced symptom stability and improvement with his medication regimen (Exhibit 7F, 14F). Mental status exams have consistently revealed the claimant to have fair memory, full

Case 1:24-cv-00907-SAB   Document 18   Filed 08/25/25   Page 13 of 14

> orientation, no suicidal/homicidal ideation, cooperative behavior, and organized thought processes.
>
> Despite these inconsistencies, in recognition of the claimant's conditions the undersigned has included notations in the residual functioning capacity that he should avoid all hazards such as ladders, ropes, and scaffolds, unprotected heights and moving machinery, and that he can understand, remember, and carry out simple work instructions. To accommodate his reports of social withdrawal and anxiety, notations that the individual can have occasional interaction with co-workers and the public have also been included in the residual functioning capacity.

(AR 25-26.)

To begin, ALJ did not merely summarize medical record. Rather, as evinced above, the ALJ gave detailed reasoning for rejecting Plaintiff claim of debilitating symptoms based on Plaintiff's conservative treatment, Plaintiff's records from emergent care, Plaintiff's noncompliance with medical professionals recommending marijuana cessation, Plaintiff's reported improvement when sober, Plaintiff's responses to his medication regime, and Plaintiff's mental status exams. Thus, Plaintiff's argument that the ALJ only summarized the medical evidence is without force.

Regarding Plaintiff's suggestion that the ALJ found only that Plaintiff's treatment had been conservative, this is not exact. To be sure, the ALJ stated that Plaintiff's treatment had been conservative because there were "few if any recommendations for intensive in-home services, crisis interventions, inpatient care, or other more aggressive treatment options that would be expected for limitations of the degree alleged." (AR 25.) However, the ALJ continued, noting that the one time he reported for crisis stabilization treatment (a year prior to his alleged onset date) Plaintiff was quickly calmed and discharged. (Id.) Significantly, the ALJ's discussion of Plaintiff's symptoms did not end there. The ALJ observed that when Plaintiff sought emergent care for anxiety, these visits "almost always precipitated by discouraged drug use." (Id.) The ALJ found that Plaintiff "exhibited persistent treatment noncompliance and continue[d] to use marijuana daily despite repeated physician directives to stop using this substance as it was likely the root cause of his condition and could exacerbate symptoms." (Id.) Indeed, Plaintiff himself stated that during sobriety "he feels more clear and less anxious." (Id.) Notwithstanding his

13

marijuana use, Plaintiff nonetheless showed "symptom stability and improvement with his medication regimen." (AR 25-26.)

While evidence of "conservative treatment" can by itself be "sufficient to discount a claimant's testimony regarding severity of impairment," Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), the ALJ here did not solely rely on this point.  Rather, the ALJ also relied upon the fact that Plaintiff was in noncompliance with medical professional opinions regarding ending marijuana use, see Chaudhry v. Astrue, 688 F.3d 661, 672 (9th Cir. 2012), as well as that Plaintiff responded to his medication regime.  See Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017).  Taken together, the ALJ's "rationale [for discounting Plaintiff's alleged symptoms] is clear enough that it has the power to convince." Smartt, 53 F4th at 499.

Therefore, the ALJ did not err in his analysis of Plaintiff's subjective complaints.

### IV.

### CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Christian Dandrew Sandoval.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  **August 25, 2025**

STANLEY A. BOONE
United States Magistrate Judge